## AFFIDAVIT OF PETER PASCIUCCO

I, Peter Pasciucco, being duly sworn, depose and state as follows:

1.      I am a Task Force Officer with Homeland Security Investigations (HSI).[1]  In addition, I am a Detective with the MBTA Transit Police.  I have been a Police Officer and Investigator since 1975.  Previously, I worked in the Massachusetts Attorney General's Office, assigned at various times to the Violent Crimes Unit, Medicaid Fraud Unit, the Drug Unit and the Organized Crime Unit.  As a Police Officer, I have investigated all types of crimes including homicide, unattended deaths, robbery, larceny and assault.  I was the Commander of the Major Case Unit at the MBTA Transit Police for four years.  Since 1996, I have been a Task Force Officer with the Department of Homeland Security and its predecessor agency, the United States Customs Service.  While at Customs, I worked in the Smuggling Group and provided technical assistance to all the groups in the office as the Technical Enforcement Officer.

2.      As an HSI Task Force Officer, I have received training and conducted numerous investigations involving drug smuggling, money laundering, bulk cash smuggling, financial fraud, counterfeit goods and undercover operations.  I am presently assigned to the HIDTA Financial Group.  I graduated from the Massachusetts State Police Academy and have taught at local police academies for more than 20 years.  I instruct in the areas of Investigative Techniques, Death Investigations, Law, Narcotics and Informant Management.  I am a graduate of Suffolk University Law School and have been member of the Massachusetts Bar since 1987.

---

[1] As a Task Force Officer, I am an "investigative or law enforcement officer" of the United States, within the meaning of 18 U.S.C. § 2510(7).  I am an officer of the United States who is empowered by law to conduct investigations and make arrests pursuant to 18 U.S.C. § 2516.

1

**PURPOSE OF AFFIDAVIT**

3. I make this affidavit in support of an application for a cell-site simulator search warrant under Federal Rule of Criminal Procedure 41 to authorize law enforcement to employ an electronic investigative technique, described in <u>Attachment B</u>, to determine the location of the cellular device assigned call number 774-764-8426 (the "Target Cellular Device"), described in <u>Attachment A</u>.

4. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5. One purpose of applying for this warrant is to determine with precision the Target Cellular Device's location. However, there is reason to believe the Target Cellular Device is currently located somewhere within this district because, as described below, the Target Cellular Device's owner resides in this district, the telephone number area code of 774 associated with the Target Cellular Device corresponds to this district; and the Target Cellular Device's owner was seen in this district on November 13, 2020. Pursuant to Rule 41(b)(2), law enforcement may locate the Target Cellular Device outside the district provided the device is within the district when the warrant is issued.[2]

6. On October 29, 2020, the grand jury returned an indictment charging KOKOU KUAKUMENSAH with four counts of wire fraud, in violation of 18 U.S.C. § 1343, and four

---

[2] As explained below, agents have been tracking the Target Cellular Device using a ping warrant. Data from the ping warrant has shown the device in locations outside of this district in, for example, New Hampshire. However, I confirmed before submitting this warrant that the Target Cellular Device is in fact located in this district to ensure compliance with the requirement that the device be located in this district at the time of the warrant's issuance.

counts of aggravated identity theft, in violation of 18 U.S.C. § 1028A. This indictment is sealed. *See* Docket Number 20-CR-40038-TSH. This same day, the Court issued an arrest warrant for KUAKUMENSAH.

7. There is probable cause to believe that the Target Cellular Device's location will assist law enforcement in arresting KUAKUMENSAH, who is a "person to be arrested" within the meaning of Federal Rule of Criminal Procedure 41(c)(4).

8. Because collecting the information authorized by this warrant may fall within the statutory definitions of a "pen register" or a "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), this warrant is designed to comply with the Pen Register Statute as well as Rule 41. See 18 U.S.C. §§ 3121-3127. This warrant therefore includes all the information required to be included in a pen register order. See 18 U.S.C. § 3123(b)(1).

## **PROBABLE CAUSE**

9. After the indictment of KUAKUMENSAH on October 29, 2020, law enforcement agents began conducting surveillance to prepare for his arrest. As part of the investigation, agents had identified 14 Sherbrook Avenue, Worcester, Massachusetts as the last known address for KUAKUMENSAH. Since the indictment, agents have conducted surveillance at this address numerous times. Agents have conducted surveillance for periods of two to three hours in the early-morning and afternoon hours. In the course of agents' surveillance, they have seen KUAKUMENSAH at the Sherbrook Avenue address only on one occasion on November 13, 2020.

10. On November 13, 2020, I knocked on the door of 14 Sherbrook Drive after I saw a black BMW bearing Massachusetts registration number 9ZK246 parked at the residence. As part of the investigation, agents identified KUAKUMENSAH as the user of this vehicle.

KUAKUMENSAH answered the door. I then told a ruse to KUAKUMENSAH in order to set up a time to arrest him. I identified myself as an agent with Homeland Security Investigations and that I was conducting an investigation in which KUAKUMENSAH was identified as a witness on a videotape related to the investigation. I asked KUAKUMENSAH if he would meet with me to view the videotape. KUAKUMENSAH agreed to meet with me and provided the phone number for the Target Phone to contact him to arrange the meeting. I was not with any other agents that day and could not arrest KUAKUMENSAH per agency safety protocols.

11. On November 16, 2020, I called KUAKUMENSAH to arrange our meeting. After making the arrangements with him, KUAKUMENSAH called me back and said he wished not to meet with me as he wanted no involvement in the "investigation."

12. On November 17, 2020, agents traveled to the Sherbrook Avenue address in an attempt to arrest KUAKUMENSAH. Agents arrived in the early morning hours and conducted surveillance for several house, but ultimately were not able to arrest KUAKUMENSAH. Agents did not see KUAKUMENSAH nor the black BMW. Around mid-day, agents knocked on the door, but no one answered. At that point, agents ceased surveillance and the arrest operation for that day.

13. On November 20, 2020, this Court issued a search warrant for location information for the Target Cellular Device from AT&T Corporation. *See* Docket No. 20-MJ-4284-DHH (the "Ping Warrant"). AT&T started providing location information in response to the Ping Warrant over the weekend of November 26 and November 27, 2020. Unfortunately, the location data from AT&T has not allowed agents to apprehend KUAKUMENSAH. Agents have attempted to locate KUAKUMENSAH on approximately five occasions using the location information. The location information provides a range of anywhere between 200 and 1500

meters of where the target cellular phone is at a given time.  That has proven to be too wide a radius for agents to locate KUAKUMENSAH.  In my training and experience, cell-site simulator search warrants like the one that I seek here provide more precise data.  Further in my training and experience, cell-site simulator information provides directional information, including longitude and latitude, that is not available with a Ping Warrant.  Further in my training and experience, cell-site simulator data can narrow the location of the target cellular phone to the building in which it is located.

## MANNER OF EXECUTION

14. In my training and experience, I have learned that cellular phones and other cellular devices communicate wirelessly across a network of cellular infrastructure, including towers that route and connect individual communications.  When sending or receiving a communication, a cellular device broadcasts certain signals to the cellular tower that is routing its communication.  These signals include a cellular device's unique identifiers.

15. To facilitate execution of this warrant, law enforcement may use an investigative device or devices capable of broadcasting signals that will be received by the Target Cellular Device or receiving signals from nearby cellular devices, including the Target Cellular Device. Such a device may function in some respects like a cellular tower, except that it will not be connected to the cellular network and cannot be used by a cell phone to communicate with others.  The device may send a signal to the Target Cellular Device and thereby prompt it to send signals that include the unique identifier of the device.  Law enforcement may monitor the signals broadcast by the Target Cellular Device and use that information to determine the Target Cellular Device's location, even if it is located inside a house, apartment, or other building.

16. The investigative device may interrupt cellular service of phones or other cellular

devices within its immediate vicinity.  Any service disruption to non-target devices will be brief and temporary, and all operations will attempt to limit the interference with such devices.  In order to connect with the Target Cellular Device, the device may briefly exchange signals with all phones or other cellular devices in its vicinity.  These signals may include cell phone identifiers.  The device will not complete a connection with cellular devices determined not to be the Target Cellular Device, and law enforcement will limit collection of information from devices other than the Target Cellular Device.  To the extent that any information from a cellular device other than the Target Cellular Device is collected by the law enforcement device, law enforcement will delete that information, and law enforcement will make no investigative use of it absent further order of the court, other than distinguishing the Target Cellular Device from all other cellular devices.

## AUTHORIZATION REQUEST

17. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41.  The proposed warrant also will function as a pen register order under 18 U.S.C. § 3123.  Consistent with the requirement for an application for a pen register order, I certify that the information likely to be obtained is relevant to an ongoing criminal investigation being conducted by Homeland Security Investigations.

18. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days from the end of the period of authorized surveillance.  This delay is justified because there is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705.  Providing immediate notice to the subscriber or user of the Target Cellular Device would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates,[6] and flee from prosecution.  *See* 18 U.S.C. §

3103a(b)(1). There is reasonable necessity for the use of the technique described above, for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

19. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cellular Device outside of daytime hours.

20. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

21. A search warrant may not be legally necessary to compel the investigative technique described in this affidavit. Nevertheless, I submit this warrant application out of an abundance of caution.

                Respectfully submitted,

                *Peter Pasciucco*
                Peter Pasciucco
                Task Force Officer
                Homeland Security Investigations

Sworn to via telephone in accordance with Federal Rule of
Criminal Procedure 4.1 on December 14 , 2020:    44

*David H. Hennessy*
David H. Hennessy
United States Magistrate Judge

7